UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SEAN WIMS <br><br> Plaintiff, <br><br> *against* <br><br> RIVER PARK RESIDENCES, L.P., <br> RELIANT REALTY SERVICES, INC., <br> PEN WISNESKI, <br> CVR ASSOCIATES, INC., <br><br> Defendants. | COMPLAINT <br><br> 2015 Civ. 4269 (VSB) <br> Judge Broderick |

## PRELIMINARY STATEMENT

1. This is an action brought by Sean Wims, a tenant residing at 40 Richman Plaza, Bronx, New York (a.k.a. River Park Towers), a residential complex owned by defendant River Park Residences LP and managed by defendant Reliant Realty Services Inc. Mr. Wims receives an "enhanced" Section 8 voucher subsidy that entitles its holder to continued occupancy in the apartment for which the voucher was issued.

2. Mr. Wims currently faces eviction from his home where he has resided since 2000. His landlord, defendant River Park Residences LP, and managing agent, Pen Wisneski of Reliant Realty Services, Inc., have refused to offer him a renewal lease. As a result, defendant CVR Associates has taken action to terminate Mr. Wims' voucher based on his failure to transfer to an apartment in another building.

3. If CVR were to terminate Mr. Wims' participation in the Section 8 program, it would be doing so without good cause, in contravention of the regulations that govern the Section 8 program. An agency administering the Section 8 program can only terminate a participant's voucher on grounds specifically enumerated in HUD's regulations—a landlord's unlawful refusal or failure to offer a lease renewal is not among these grounds.

4.  If Mr. Wims were to have his voucher terminated, he would no longer be able to afford his rent, and he would soon be subject to eviction by River Park Residences LP. Essentially, the refusal by River Park Residences LP, Reliant Realty Services Inc, and Pen Wisneski to offer Mr. Wims a new lease would cause his eviction and violate both Mr. Wims' right to remain in his apartment under 42 USC § 1437f(t) and the regulatory agreement governing River Park Towers.

5.  Consequently, Plaintiff brings this action in order to obtain a declaration that defendants are in violation of applicable laws, including Sections 1437d and 1437f(t) of the U.S. Housing Act and seeking an injunction prohibiting the termination of his voucher and compelling Defendant River Park Residences LP, Reliant Realty Services Inc., and Pen Wisneski to offer him a renewal lease.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction over this action pursuant to 28 USC § 1331.

7.  This Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 USC § 2201 et seq.

8.  Venue is proper in the Southern District of New York pursuant to 28 USC § 1391(b) because plaintiff and all defendants are located in this district.

## PARTIES

### I.  Plaintiff

9.  Plaintiff Sean Wims has been the tenant of 40 Richman Plaza, Apartment 23F (the "subject premises") since 2000. Since 2013, he has been a holder of an "enhanced" Section 8 voucher pursuant to 14 USC §1437f(t) administered by defendant CVR Associates as "CVR New York."

## II.   Defendants

10.   Defendant River Park Residences, LP (hereinafter "River Park") is a domestic limited partnership, established and existing in the State of New York, having its principal place of business at 885 Second Avenue, 31st Floor, New York, New York. River Park is the owner of River Park Towers, a large residential complex located in the Bronx in which plaintiff Sean Wims is a tenant. River Park Towers was subsidized by the United States Department of Housing and Urban Development (hereinafter "HUD") with a loan under its Section 236 until 2012, when River Park purchased the development and prepaid the HUD mortgage.

11.   Defendant Reliant Realty Services Inc. (hereinafter "Reliant Realty") is a domestic corporation established and existing in the State of New York, having its principal place of business at 885 Second Avenue, 31st Floor, New York, New York. Reliant Realty is registered with the New York City Department of Housing Preservation and Development as the managing agent for River Park Towers.

12.   Pen Wisneski is a natural person employed with Reliant Realty Services Inc. with a principal place of business at 885 Second Avenue, 31st Floor, New York, New York. Ms. Wisneski is registered with the New York City Department of Housing Preservation and Development as the managing agent for River Park Towers.

13.   CVR Associates Inc. (hereinafter "CVR") is a foreign business corporation established in Florida, having its principal place of business in 2309 S. MacDill Avenue, Suite 200, Tampa, Florida. CVR's New York operations are run out of their office at 112 East Post Road, Suite 102, White Plains, New York. Upon information and belief, CVR has been contracted by the New York State Division of Housing & Community Renewal (hereinafter "DHCR") to administer its Section 8 voucher program for certain buildings in the Bronx. CVR currently administers Plaintiff's housing voucher.

## STATUTORY AND REGULATORY SCHEME

### I. Mitchell-Lama and Section 236 mortgages

14. New York's Limited-Profit Housing Companies Act of 1955 authorized a program to incentivize the development of affordable housing by offering private developers tax abatements and low-interest loans subsidized by the federal, state or local government. The program provides rent subsidies to lower income families to enable them to obtain safe and decent housing. This program is commonly known as the Mitchell-Lama Housing Program.

15. Many Mitchell-Lama projects, including River Park Towers, utilized federally subsidized Section 236 mortgages. These mortgages committed landlords to provide affordable housing for at least 20 years, after which they could prepay their mortgage and avoid restrictions.

16. "Section 236" of the Housing and Urban Development Act of 1968 specifically authorized "the Secretary ... to make, and contract to make, periodic interest reduction payments on behalf of the owner of a rental housing project designed for occupancy by lower income families ...." 12 USC § 1715z-1 (a). Section 236 projects are subject to HUD regulation regarding tenant selection, occupancy and rent setting. 12 USC § 1715z-1(s).

### II. Section 236 decoupling

17. Pursuant to 12 USC 1715z-1(e)(2), a Section 236 project may pre-pay its HUD-insured mortgage and continue to receive interest reduction payments provided the owner agrees to enter into any income and rent restrictions required by HUD. This procedure is known as a Section 236 "decoupling."

18. HUD's Notice governing Section 236(e)(2) decoupling provides that owners must enter into Interest Reduction Payment ("IRP") and Use Agreements that "require the continuation of the low-income housing resource for 5 years beyond the IRP term." HUD

Directive 00-8 Guidelines for Continuation of Interest Reduction Payments after Refinancing: "Decoupling", under Section 236(e)(2) and refinancing of insured Section 236 at ¶¶ 2, 4.

19. After conversion, Section 236 rules are used to establish "Basic and Market Rent schedules, occupancy and habitability standards, income limits, and financial reporting requirements." *Id.* However, a designated local agency, not HUD, assumes responsibility for providing regulatory oversight of the project. *Id.* at ¶ 4.

20. HUD's Notice declares that "involuntary displacement of existing tenants ... is unacceptable." *Id.* at ¶ 10. To prevent such displacement, the owner's IRP application must explain "how tenants will be protected from any rent increase due to the proposed transaction." *Id.*

### III. Section 8 voucher conversion

21. In order to prevent sudden, large-scale displacement of tenants who reside in buildings subsidized by HUD mortgages, Congress amended the Housing Act in 1999 to provide that, upon prepayment of the loan, current tenants receive "enhanced" Section 8 vouchers. *See* 42 USC § 1437f(t). Enhanced vouchers provide subsidies that pay the difference between the reasonable market price of the rental and the greater of 30 percent of the tenants' household income or the rental amount that the household was paying when the tenants first became eligible for enhanced vouchers. *See* 42 USC § 1437f(t)(1)(D). In other words, enhanced vouchers allow tenants to continue to pay an affordable rent even after the owner begins to charge a market rate.

22. 42 USC § 1437f(t) further prohibits an owner from evicting an enhanced voucher-holding tenant without cause. In pertinent part, the text of 42 USC § 1437f(t)(1)(B) provides that

> [e]nhanced voucher assistance under this subsection for a family shall be voucher assistance under subsection (o), of this section, except that under such enhanced voucher assistance - (B) the assisted family may elect to remain in the same project in which the family was residing on the date of the eligibility event for the project...

23. "Eligibility event" is defined in 42 USC § 1437f(t)(2) as follows:

> For purposes of this subsection, the term "eligibility event" means, with respect to a multifamily housing project, ...the termination or expiration of the contract for rental assistance under this section for such housing project...results in tenants in such housing project being eligible for enhanced voucher assistance under this subsection.

24. If the tenant chooses to move from his or her apartment, the enhanced voucher converts to a regular Section 8 voucher that the tenant takes to the new apartment, but with a lower payment standard. *See* 42 USC § 1437f(t)(1)(C). No further subsidy applies to any future tenant who moves into the vacated market-rate apartment.

25. HUD has made it clear that formerly HUD subsidized landlords must comply with 42 USC § 1437f(t)(1)(b) by accepting tenants' enhanced vouchers and allow them to remain in their apartments unless evicted for cause. HUD Notice PIH 2001-41, which was issued on November 14, 2001 and references Section 8 Tenant-Based Assistance (Enhanced and Regular Housing Choice Vouchers) For Housing Conversion Actions states in part II(B), that "[a] family that receives an enhanced voucher has the right to remain in the project as long as the units are used for rental housing." *See also* HUD Notice H 2012-3 (updating prior notice).

**IV.  Section 8's "Good Cause" Requirements for Termination**

26. A PHA may terminate Section 8 assistance to a participant only upon the grounds set forth in 24 CFR § 982.552. Each enumerated ground relates to families' improper conduct or noncompliance with program rules. Included among these grounds are violations of any of the

program obligations specified in 24 CFR § 982.551, such as supplying information that the PHA or HUD determines to be necessary in the administration of the program.

27.   A PHA may not terminate assistance to a participant without notice of the "specific grounds" for the termination and the opportunity for a hearing. 42 USC § 1437d(k).

## V.    N.Y.C. Human Rights Law

28.   In addition to the requirements of the Section 8 program, New York City law places certain restrictions on residential lease terms.

29.   The Administrative Code of the City of New York prohibits landlords from refusing to rent to or otherwise discriminating against tenants on the basis of the tenant's lawful source of income. See NYC Admin. Code 8-107(f). "Lawful source of income" is defined as specifically including "income derived from social security, or any form of federal, state or local public assistance or housing assistance including section 8 vouchers." NYC Admin. Code 8-102.

## VI.   Regulatory Agreement

30.   On December 13, 2012, defendant River Parks entered into a regulatory agreement with the New York State Housing Finance Agency (hereinafter "HFA"). This agreement committed River Parks to continuing River Park Towers as an affordable housing community for at least 15 years in exchange for a $157,500,000 loan from HFA.

31.   The regulatory agreement gives tenants the right to seek specific performance of its terms. Paragraph 3.2(a) of the regulatory agreement states that:

> Any existing, past or prospective tenants of the Project who qualify, qualified, or would qualify as low income occupants pursuant to §42(g) of the Code are hereby expressly agreed to be beneficiaries of this [agreement] and may apply to any court of competent jurisdiction in the State of New York for specific performance of any provisions of the [agreement], notwithstanding any action which may or may not be taken by the Agency.

32. In addition, the regulatory agreement prohibits River Park from evicting or refusing to renew the lease of a tenant without good cause. Paragraph 3.2(d)(5) provides that during the term of the agreement "no existing tenant ... may be removed whether by eviction, expiration of lease, or for any reason other than good cause."

33. This provision is mandated by 26 USC § 42(h)(6)(B), which sets the parameters for regulatory agreements concerning developments that receive Low-Income Housing Tax Credits (LIHTC). River Park was awarded this subsidy when it refinanced and took possession of the River Park Towers development.

## STATEMENT OF FACTS

34. Plaintiff Sean Wims is a tenant residing in apartment 23F at 40 Richman Plaza, Bronx, New York, which is part of the River Park Towers residential complex owned by defendant River Park and managed by defendants Reliant Realty and Pen Wisneski.

35. Mr. Wims is a long-term tenant who lived at 40 Richman Plaza prior to River Park's acquisition of the building. He currently receives a Section 8 enhanced voucher, upon which he relies to pay a substantial portion of his rent, which he otherwise could not afford on his fixed income.

36. Since coming into possession of River Park Towers, River Park has repeatedly tried to evict Mr. Wims and has frustrated his attempts to retain his enhanced voucher subsidy. Initially, it refused to repair conditions in Mr. Wims' apartment that would allow it to pass the initial housing quality standards inspection required for him to receive an enhanced voucher. Then, when Mr. Wims pursued his warranty of habitability defense in a nonpayment proceeding commenced by River Park, and sought a rent abatement based on these conditions, River Park, Reliant Realty, and Ms. Wisneski retaliated by refusing to offer a complete renewal lease to sign.

The Bronx Housing Court ultimately granted Mr. Wims a sizable abatement and entered judgment in his favor.

37.     River Park, Reliant Realty, and Ms. Wisneski then commenced a holdover proceeding against Mr. Wims. The Court eventually dismissed the proceeding.

38.     Nonetheless, because the landlord defendants have refused to renew Mr. Wims' lease, CVR has threatened to terminate Mr. Wims' voucher.

**River Park Towers' Section 236 Decoupling and Section 8 conversion**

39.     River Park Towers' construction was originally financed by a HUD-subsidized section 236 mortgage. This loan was taken out by River Park's predecessor in interest on October 30, 1972.

40.     Defendant River Park purchased River Park Towers in December of 2012. At the same time, defendants Reliant Realty and Pen Wisneski began managing the property.

41.     As part of this purchase, River Park opted to put the property through Section 236 "decoupling," which included a prepayment of the HUD-subsidized mortgage. This prepayment gave existing tenants a right to an enhanced Section 8 voucher in accordance with 42 USC § 1437f(t).

42.     River Park subsequently entered into the regulatory agreement described above, which provided protections against displacement for existing tenants of the development.

**Failed Initial Housing Quality Standards Inspection**

43.     On May 6, 2013, CVR performed an Initial Housing Quality Standards Inspection of Mr. Wims' unit. Shortly thereafter, it issued a notice stating that the unit had failed inspection and that Mr. Wims' Enhanced Section 8 voucher could not be activated until the conditions were

repaired. CVR then ordered River Park to correct all deficiencies by June 13, 2013, and to subsequently notify CVR for reinspection of the unit.

44. River Park did not repair the violations until October 2013. In November 2013, Mr. Wims' voucher was finally issued and a Housing Assistance Payment (HAP) contract was issued effective December 1, 2013.

**River Park's first eviction action against Mr. Wims and Mr. Wims' successful abatement counter claim**

45. River Park brought an eviction proceeding against Mr. Wims in Bronx Housing Court in September 2013 alleging nonpayment of rent. In his answer, Mr. Wims claimed that River Park had violated the warranty of habitability and that he was entitled to a rent abatement.

46. Only after Mr. Wims raised his warranty claims in court did River Park finally correct the conditions in his apartment sufficiently to allow the apartment to pass the Section 8 inspection in November 2013.

47. Mr. Wims continued to pursue his abatement counterclaim against River Park and Reliant Realty in Bronx Housing Court and was eventually awarded a 30 percent abatement for the period of March 2012 through March 2014.

48. Despite passing CVR's inspection, mentioned above, Mr. Wims' unit continued to have problems with mold and water leaks.

**River Park's refusal to offer Mr. Wims a renewal lease**

49. Since acquiring the River Park Towers development, Defendants River Park, Reliant Realty, and Pen Wisneski have refused to offer Mr. Wims a renewal lease for his unit.

50. During the nonpayment proceeding brought against Mr. Wims, Mr. Wims requested that Defendants bring a lease to court. They failed to do so.

51.     Rather than produce a lease in court, Defendants asked that Mr. Wims visit their office in order to sign the lease.

52.     When Mr. Wims went to Defendants' office to view and sign the lease, he was not provided with a full lease. Instead, he was a given a few pages that did not include a rider.

53.     Upon restoring the nonpayment proceeding so that he could pursue his abatement claim, Mr. Wims again requested a lease from Defendants. Defendants refused this request, and after the resolution of the abatement hearing, brought a holdover proceeding against Mr. Wims.

**River Park's second eviction action against Mr. Wims**

54.     Meanwhile, River Park continued to refuse to renew Mr. Wims' lease agreement.

55.     On or about July 15, 2014, Mr. Wims received a Notice of Termination from River Park allegedly terminating the lease agreement on the grounds that Mr. Wims had allegedly engaged in "objectionable conduct."

56.     A holdover proceeding based on these allegations was instituted on or about September 2, 2014 in Bronx Housing Court.

57.     On March 17, 2015, River Park's case against Mr. Wims was dismissed by the Honorable Judge Eardell Rashford.

58.     With the dismissal of the aforementioned holdover proceeding on March 17, 2015, River Park no longer has a pending eviction proceeding against Mr. Wims. Still, after two unsuccessful attempts to evict Mr. Wims in housing court, River Park still has failed to offer Mr. Wims a renewal lease, threatening his longterm tenancy.

**Current status of Mr. Wims' enhanced Section 8 voucher**

59. As described above, Mr. Wims did not receive his enhanced voucher until December 1, 2013, due to River Park's failure to maintain the unit in a condition acceptable to federal housing quality standards required under the Section 8 program.

60. On or around May 30, 2014, CVR stopped all payments of Mr. Wims' subsidy to River Park due to its failure to renew Mr. Wims' lease. At that time, Mr. Wims was invited by CVR to apply for a transfer voucher so that he could move out of River Park—something he had no interest in doing.

61. The transfer process would require that Mr. Wims find a new apartment, arrange for transfer of his Section 8 voucher subsidy payments to the owner of the new apartment, and vacate his current longterm apartment.

62. On November 5, 2014, Mr. Wims received notice from defendant CVR that he had been determined ineligible for the Section 8 program. The notice alleged that he had declined to sign a lease for his current unit and thus was in violation of his obligation to provide information under 24 CFR § 982.551.

63. Following the notice from CVR, Mr. Wims contacted CVR on various occasions, indicating that he was not interested in transferring his Section 8 subsidy to another apartment, and indicating that his landlord had refused to renew his lease agreement.

64. However, CVR indicated that he would be required to travel to its main offices, in White Plains, New York, a difficult prospect for Mr. Wims, who lives on a low, fixed income.

65. Mr. Wims went to CVR and was given a transfer voucher that would allow him to transfer his subsidy to another apartment outside of the development. Mr. Wims continues to have no interest in moving from his current apartment.

66. On May 5, 2015, Mr. Wims received a letter from CVR stating that his transfer voucher was due to expire April 2, 2015. The letter stated that upon expiration of his voucher, he would be terminated from the program.

67. While the aforementioned letter is confusing—it warns Mr. Wims that his voucher will be terminated on a date that had already past—it can be concluded that Mr. Wims' voucher was terminated on April 2, 2015 when his transfer voucher was set to expire.

68. Without his Section 8 subsidy, Mr. Wims will be unable to pay the market rent for his apartment and will be subject to eviction by River Park. Thus the actions of defendants River Park and CVR have together unlawfully frustrated Mr. Wims' right to remain in his apartment as guaranteed by federal law.

## CAUSES OF ACTION

**First Cause of Action: River Park Residences LP, Reliant Realty Services Inc., and Pen Wisneski have violated 42 USC § 1437f(t).**

69. River Park Residences LP, Reliant Realty Services Inc., and Pen Wisneski are in violation of 42 USC § 1437f(t) and its implementing rules and regulations.

70. 42 USC § 1437f(t) guarantees enhanced voucher tenants like Plaintiff the right to remain in their apartment after the conversion of a project-based Section 8 building.

71. River Park Residences LP, Reliant Realty Services Inc., and Pen Wisneski have refused to renew Mr. Wims' lease without good cause, thus frustrating and impairing his right to remain in his apartment, causing the potential termination of his subsidy, and rendering him subject to eviction.

72. As a result of defendants' violations, Mr. Wims has suffered and continues to suffer damages, including the threat of eviction from his home and the loss of his Section 8 subsidy.

**Second Cause of Action: CVR Associates Inc. has violated 42 USC § 1437f(t).**

73. CVR Associates Inc. has terminated Mr. Wims' voucher, without good cause, which practically ensures Mr. Wims' eviction.

74. CVR's termination of Mr. Wims' voucher violates 42 USC § 1437f(t) which gives Mr. Wims a right to remain in his apartment.

75. As a result of CVR's violations, Mr. Wims has suffered and continues to suffer damages, including the threat of eviction from his home and the loss of his Section 8 subsidy.

**Third Cause of Action: CVR Associates Inc. has violated the Housing Act's "Good Cause" Requirement for Voucher Termination.**

76. CVR Associates Inc., by terminating Mr. Wims' participation in the Section 8 program without good cause, without proper notice, and without affording him the opportunity for a hearing, has violated the United States Housing Act and its implementing regulations, including 42 USC § 1437d(k) and 24 CFR § 982.552.

77. A cause of action for CVR's violation of the United States Housing Act is created by 42 USC § 1983.

78. As a result of CVR's actions, Mr. Wims has suffered and continues to suffer damages, including the threat of eviction from his home and the loss of his Section 8 subsidy.

**Fourth Cause of Action: CVR Associates Inc. has violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution.**

79. by moving to terminate Mr. Wims' voucher without good cause, has violated the Due Process Clause of the Fourteenth Amendment of the United States Constitution, for which a cause of action is created by 42 USC § 1983.

80. As a result of CVR's violation, Mr. Wims has suffered and continues to suffer damages, including the threat of eviction from his home and the loss of his Section 8 subsidy.

**Fifth Cause of Action: River Park Residences LP, Reliant Realty Services Inc., and Pen Wisneski have violated the regulatory agreement governing River Park Towers.**

80. River Park Residences LP, Reliant Realty Services Inc., and Pen Wisneski are in violation of the regulatory agreement governing River Park Towers.

81. Paragraph 3.2(d)(5) provides that during the term of the agreement "no existing tenant … may be removed whether by eviction, expiration of lease, or for any reason other than good cause."

82. The aforementioned regulatory agreement explicitly gives tenants a cause of action to enforce its terms in paragraph 3.2(a).

83. River Park Residences LP, Reliant Realty Services Inc., and Pen Wisneski have refused to renew Mr. Wims' lease without good cause.

84. As a result of landlord defendants' violation, Mr. Wims has suffered and continues to suffer damages, including the threat of eviction from his home and the loss of his Section 8 subsidy.

**Sixth Cause of Action: River Park Residences LP, Reliant Realty Services Inc., and Pen Wisneski are in violation of the New York City Human Rights Law, which prohibits income discrimination.**

85. New York City Human Rights Law prohibits landlords from discriminating based upon "any lawful source of income" when offering housing accommodations. NYC Admin. Code § 8-107(5)(a)(2).

86. Such lawful source of income includes "income derived from social security or any form of federal, state or local public assistance or housing assistance including section 8 vouchers." *Id.* at § 8-102(25).

87. River Park Residences LP, Reliant Realty Services Inc., and Pen Wisneski have refused without good cause to renew Mr. Wims' lease which is a prerequisite for the continuation of his Section 8 subsidy. Such conduct constitutes discrimination based on source of income under City law.

88. As a result of landlord defendants' violation, Mr. Wims has suffered and continues to suffer damages, including the threat of eviction from his home and the loss of his Section 8 subsidy.

**RELIEF**

Plaintiff asks that this Court:

(1) enter a final judgment pursuant to 28 USC §§ 1331, 1343(3) and 1337 of the Federal Rules of Civil Procedure declaring that River Park Residences LP, Reliant Realty Services Inc., and Pen Wisneski are in violation of 42 USC § 1437f(t), the regulatory agreement governing the subject premises, and the New York City Human Rights Law; and

(2) enter a final judgment pursuant to 28 USC §§ 1331, 1343(3) and 1337 of the Federal Rules of Civil Procedure declaring that CVR Associates Inc. is in violation of the United States Housing Act and its implementing regulations and the Due Process Clause of the Fourteenth Amendment of the United States Constitution; and

(3) enter a mandatory injunction compelling defendants River Park Residences LP, Reliant Realty Services Inc., and Pen Wisneski to renew plaintiff's lease on terms in compliance with 42 USC § 1437f(t), the regulatory agreement governing the subject premises, and the New York City Human Rights Law, and the United States Housing Act; and

(4) enter a mandatory injunction prohibiting defendant CVR Associates Inc. from terminating plaintiff's Enhanced Section 8 Voucher, compelling reinstatement in the event plaintiff's Enhanced Section 8 Voucher has been terminated, and compelling retroactive and prospective payment of unpaid subsidy amounts; and

(5) award damages to Sean Wims in the actual amount sustained by Plaintiff, as well as for emotional distress suffered by Plaintiff;

(6) award costs and attorneys' fees to Sean Wims for the time spent commencing and litigating this proceeding; and

(7) grant such other and further relief as the Court may deem just and proper.

Dated: May 29, 2015
       Bronx, New York

                                            Respectfully,

                                            Robert G. Hammond, of Counsel
                                            Ian Davie, of Counsel
                                            Kathryn Neilson, of Counsel
                                            Christopher Lamb, of Counsel
                                            Edward Josephson, of Counsel
                                            LEGAL SERVICES NYC-BRONX
                                            349 E. 149th Street, 10th Floor
                                            Bronx, New York 10451
                                            Attorneys for Certain Plaintiff
                                            (718) 928-3677

                                    By: _____
                                            Ian Davie (ID 5498)